UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT N. THOMAS,

    Plaintiff,

v.

CASE No. 8:10-CV-2886-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

The plaintiff, who was thirty-eight years old at the time of the administrative hearing and who has an eighth grade education, has worked as

---

*The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

a sandblaster and tree cutter (Tr. 31, 32, 44). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to injuries to his lower back and left arm from an auto accident (Tr. 149). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a _de novo_ hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of degenerative disc disease of the lumbar and cervical spine with radiculopathy and chronic pain, levoscoliosis of the lumbar spine, status post open reduction, internal fixation (ORIF) of the left forearm and status post ORIF of the right ankle (Tr. 17). He concluded that these impairments restricted the plaintiff as follows (Tr. 18):

> [T]he claimant has the residual functional capacity to perform less than a full range of light work....The claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. He is able to stand and walk for five hours out of an eight hour work day. He is able to sit six hours out of an eight hour workday with an option to alternate positions at will. The claimant can engage in frequent pushing and pulling that includes the operating of hand and foot controls. The claimant can frequently climb ramps or stairs; however, the claimant should never climb ladders,

> ropes or scaffolds. The claimant can frequently balance, but only perform occasional stooping, kneeling, crouching and crawling. The claimant can reach in all directions; however, overhead reaching is limited in the left upper extremity. Moreover, fine manipulation with the left upper extremity is limited.

The law judge determined that these restrictions prevented the plaintiff from performing past work (Tr. 20). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform (Tr. 21). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 22). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the

Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen. 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff asserts several challenges, which focus on functional limitations to his left arm and hand, and whether he has the mental aptitude to do the jobs the law judge found he could perform. None of the challenges constitutes reversible error.

A. The plaintiff first alleges that the law judge failed to determine the degree to which he is limited in using his left hand for fine

manipulation, and in using his left arm for overhead reaching (Doc. 22, pp. 6-8). Further, the plaintiff contends in another argument that the law judge should have addressed "the quality of use" of the left hand (id., pp. 10-11). Because these contentions are related, they are considered together.

In the law judge's decision, she stated that the plaintiff's ability to engage in overhead reaching and fine manipulation with the left upper extremity is limited, but did not state to what extent it is limited (Tr. 18). However, this imprecision in the residual functional capacity was clarified by the operative hypothetical question to the vocational expert. Thus, as the plaintiff acknowledges (Doc. 22, p. 7), the law judge added to the pertinent hypothetical question a limitation to "frequent" overhead reaching with the left upper extremity, and "frequent" fine manipulation with the left upper extremity (id.; Tr. 45-46). The vocational expert responded that the plaintiff with such limitations could perform light work jobs such as a cashier, a new account clerk, a parking lot attendant, and a rental clerk (Tr. 21, 45-46). In concluding that the plaintiff was not disabled, the law judge relied on the vocational expert's response to this hypothetical and found that the plaintiff could perform work in the national economy (see Tr. 21, 22). Under these

circumstances, the residual functional capacity determination regarding the plaintiff's left upper extremity limitations was effectively modified to "frequent." That eliminates any ambiguity in the residual functional capacity and, consequently, the imprecision of the residual functional capacity stated in the decision was harmless error, if error at all. Corbitt v. Astrue, 2008 WL 1776574 at *3 (M.D. Fla. 2008)(unpub. dec.).

In his memorandum, "[t]he Plaintiff posits that the degree of limitation must be explicitly set forth in the decision," and that "it cannot be presumed the ALJ meant" a "frequent" limitation based on the law judge's reliance on the vocational expert's response to a hypothetical question which included that limitation (Doc. 22, p. 7). The plaintiff, however, does not cite any evidence that the law judge had a greater limitation in mind than "frequent." Further, as discussed below, the medical record does not support a greater limitation. Additionally, the plaintiff does not cite to any legal authority holding that there is reversible error when an imprecision in the decision is rectified by the inclusion of the specific limitation in the pertinent hypothetical question. Contra Corbitt v. Astrue, supra.

The plaintiff also argues that his fine manipulation capability is more limited than the law judge found (see Doc. 22, pp. 7, 10). However, the plaintiff does not cite to any medical record or physician's opinion that he is more limited in overhead reaching and fine manipulation than the law judge found (because there is no such evidence). Rather, the plaintiff relies upon his administrative hearing testimony that it is difficult for him to write, and throw, with his left hand (id., pp. 7, 10).

Based on this testimony, the plaintiff argues that the law judge should have made a finding regarding "the quality of use" of his left hand, meaning that the law judge should have assessed whether the plaintiff's "fine manipulation aptitude" fell within the middle or lowest third of the population (see id., pp. 10-11; see also id. p. 7). This contention is meritless.

The law judge found that plaintiff could engage in fine manipulation frequently, and a further finding concerning where the plaintiff's aptitude for fine manipulation falls in the general population would add nothing to a determination of the plaintiff's functional capacity. The plaintiff has not provided any explanation showing that his fine manipulative aptitude makes any difference in his functional capacity. Once the law judge

found that the plaintiff can perform fine manipulation frequently, no further finding is necessary.

Moreover, the law judge's finding is supported by substantial evidence. Significantly, the law judge discussed the plaintiff's testimony that he has a metal plate in his hand which limits his ability to use his left hand, that he has problems writing, and that he is unable to feel his fingertips (Tr. 16). The law judge took the plaintiff's testimony into account in finding that he was limited to frequent fine manipulation with his left hand (Tr. 19).

However, she found that the plaintiff's "symptoms are not credible to the extent that they are inconsistent" with the residual functional capacity (id.). The law judge gave a cogent explanation for declining to credit fully the plaintiff's testimony (Tr. 19-20).

Furthermore, the medical records are sparse, and there is no opinion from a physician, treating or otherwise, which opines that the plaintiff has greater fine manipulation limitations than those found by the law judge (see Tr. 20). To the contrary, both state nonexamining reviewers opined that the plaintiff had no fine manipulative limitations (Tr. 237, 245). Further, the law judge detailed in the decision the findings of consultative examiner Dr.

Bhupendra Kumar Gupta, who stated that the plaintiff had excellent grip strength in both hands; fine bilateral manipulation; five out of five muscle strength; a normal range of motion in all of his extremities, including forearms; and no muscle group atrophy or wasting (Tr. 19; see Tr. 208-12). Dr. Gupta also noted that the plaintiff was able to undress and dress himself, take off his footwear, and open and close doors by turning the knob handles (Tr. 211).

Significantly, the plaintiff has not challenged the law judge's credibility determination (see Doc. 15, p. 2)(the scheduling Order directs the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and to support those challenges "by citations to the record of the pertinent facts and by citations of the governing legal standards"). Therefore, the plaintiff has waived any argument that the law judge should have found, based on the plaintiff's testimony, that his fine manipulation ability is more limited.

In sum, the record clearly supports the law judge's finding that the plaintiff can engage in fine manipulation frequently. Additionally, the plaintiff fails to explain, or cite to any legal authority, which supports his

argument that the law judge should have determined whether his finger dexterity falls within the middle or lowest third of the population (Doc. 22, p. 10). Consequently, the plaintiff's challenges to the law judge's determination of his upper left extremity limitations are meritless.

B. The plaintiff also challenges whether he has the mental aptitude to perform the jobs of cashier, new account clerk, or rental clerk (id., pp. 8-10). The plaintiff argues that, in making this determination, the law judge failed to consider his testimony that he has comprehension and memory problems, and that, although he was promoted to the ninth grade, he received failing marks for grades four through eight (id., p. 8). The plaintiff argues that, if this testimony was accepted, the jobs identified by the vocational expert may exceed his intellectual capabilities (id.).

The plaintiff's contention that the law judge failed to consider his testimony regarding his mental aptitude is meritless. Thus, the law judge discussed in the decision the plaintiff's testimony that he participated in special education classes and quit school in the ninth grade (Tr. 16). She further noted the plaintiff's testimony that he had difficulty understanding the questionnaires sent to him by the Social Security Administration, and the

plaintiff's belief that he lacks the education necessary to become gainfully employed (Tr. 16, 17). This discussion shows that the law judge considered the plaintiff's testimony of mental limitations.

Furthermore, based on the plaintiff's testimony, the law judge found that the plaintiff "has a limited education," and considered him only for unskilled jobs (see Tr. 21, 45-47). The plaintiff does not suggest what other limitations the law judge should have found, much less were compelled by the evidence. See Adefemi v. Ashcroft, supra. Rather, the plaintiff argues that the case should be remanded for a determination of "his actual level of education versus the numerical level he had attained" (Doc. 22, p. 8). However, based on the plaintiff's testimony, the law judge's finding that he has a "limited education" is accurate. Thus, under the regulations, "a 7th grade through 11th grade level of formal education is a limited education." 20 C.F.R. 404.1564(b)(3), 416.964(b)(3).

Furthermore, the law judge's determination of the plaintiff's mental capacity is supported by substantial evidence. In this regard, the law judge considered the opinions of consultative examiner, Gerald Mussenden, Ph.D., a licensed psychologist, who stated that the plaintiff was emotionally

stable and had no mental difficulties, and nonexamining state medical consultant, Linda O'Neil, Ph.D., who reported that the plaintiff did not have a medically determinable mental impairment (Tr. 17, 20).

Dr. Mussenden found, among other positive mental capabilities, that the plaintiff "is able to comprehend language/speech; is able to focus and concentrate; is able to spontaneously adapt to changing situations around him; has an adequate recall for remote and recent events; and is able to mentally persist with different tasks" (Tr. 217). Further, Dr. Mussenden opined that the plaintiff "was able to apply judgment and common sense to problem situations and could interpret abstract concepts" and had good mathematical skills (id.). Dr. O'Neil supported the conclusion that the plaintiff has no mental impairments (Tr. 250-62). Therefore, substantial evidence supports the law judge's finding that the plaintiff falls in the category of a limited education.

Next, the plaintiff argues that substantial evidence does not support a finding that the plaintiff could work as a rental or new account clerk because these jobs require a high school education (Doc. 22, pp. 9-10). He also contends that there is no record evidence that there are a significant

number of cashier jobs in the national economy that do not require a high school diploma (id., pp. 9-10.).

The law judge found that the plaintiff had a limited education (Tr. 21) and, cognizant of this limitation, the law judge asked the vocational expert whether the jobs he identified in response to the pertinent hypothetical question required a certain educational level (Tr. 46). The vocational expert responded that a high school diploma is necessary to be a new account clerk, and that a rental clerk position would most likely require a high school diploma (Tr. 47). The vocational expert stated that the parking lot attendant job has no educational requirement, and cashier jobs, generally in an airport or a parking lot venue, do not require a high school diploma (see Tr. 46-47). Thus, although the plaintiff is correct that new account clerk and rental clerk jobs are not consistent with his educational level, this is, at most, a harmless error because there is substantial evidence supporting the finding that the plaintiff's educational level is sufficient to permit work as a parking lot attendant and cashier (see Tr. 47).

Notably, the law judge did not expressly find that the plaintiff could perform the jobs of new account clerk and rental clerk, as well as the

jobs of cashier and parking lot attendant. Rather, she summarized the testimony of the vocational expert that the plaintiff could perform those jobs, adding that the expert pointed out that the job of rental clerk required a high school education (Tr. 21). She then simply found based on all the evidence that the plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 22). That finding is amply supported by the plaintiff's ability to perform the jobs of cashier and parking lot attendant.

The plaintiff seeks to exclude the cashier position from consideration because the record purportedly does not show that there are sufficient cashier jobs in the national economy available to a person without a high school diploma (Doc. 22, pp. 9-10). However, in response to the law judge's query whether there were jobs for a person the plaintiff's "age, education" and residual functional capacity, the vocational expert testified that there were 115,000 cashier jobs in the United States, and 1300 in the state (Tr. 45-46, emphasis added). The law judge quoted this undisputed evidence in his decision (Tr. 21). This testimony constitutes substantial evidence that there are a significant number of cashier positions in the

economy for someone with the plaintiff's age, education, and residual functional capacity.

The plaintiff speculates that "the total number of cashier positions with a sit/stand option would be eroded" without a high school diploma (Doc. 22, pp. 9-10). In support of this contention, the plaintiff cites to the vocational expert's testimony that a cashier who did not have a high school diploma would "basically work[] at the airport or a parking garage" (Tr. 47). However, simply because the vocational expert specified the type of businesses that accept cashiers without high school diplomas does not mean that the vocational expert's earlier testimony that there are a significant number of cashier jobs in the national economy is inapplicable. In all events, the law judge, as the fact-finder, was certainly entitled to construe the expert's figures concerning the cashier position as pertaining to cashier jobs that had a sit/stand option and did not require a high school diploma. Tellingly, the plaintiff's attorney did not think there was any issue regarding the number of cashier jobs, as she did not question the vocational expert at the hearing on this subject. Therefore, this argument is unpersuasive.

Accordingly, the evidence regarding the cashier position supports the law judge's finding that there are other jobs in the national economy the plaintiff had the capacity to perform.

C. The plaintiff's final argument is that there is an inconsistency between the plaintiff's residual functional capacity and the description of the parking lot attendant job in the Dictionary of Occupational Titles (DOT) (Doc. 22, pp. 11-12). The vocational expert's testimony that a person with the plaintiff's age, education, past work experience, and residual functional capacity could perform work as a parking lot attendant (Tr. 45-46) constitutes substantial evidence that the plaintiff could perform this job. Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000).

The plaintiff argues, in a conclusory manner, that the job of parking lot attendant, as described in the DOT, is "inconsistent with an individual who needs to alternate positions at will" (Doc. 22, p. 11). However, the plaintiff makes no showing how this job is inconsistent with a sit/stand option. Rather, he merely quotes in part the DOT job description for parking lot attendant, and leaves unexplained the alleged inconsistency (see id.). This lack of explanation is significant because, as the Commissioner

points out, there is no apparent inconsistency since several job duties of a parking lot attendant can be done sitting, standing, or walking (Doc. 23, p. 16).

Moreover, upon the law judge's query, the vocational expert stated that his testimony was consistent with the DOT, and there was no evidence before the law judge to the contrary (Tr. 48). Therefore, the plaintiff's contention that there is an inconsistency between the vocational expert's testimony and the DOT's description of job duties for a parking lot attendant is baseless.

In all events, the law judge was entitled to rely upon the vocational expert's testimony even if his testimony conflicted with the DOT. Jones v. Apfel, supra, 190 F.3d at 1229-30. Therefore, the vocational expert's testimony provided substantial evidence supporting the law judge's finding that the plaintiff was capable of performing the job of parking lot attendant.

The plaintiff also suggested that there was insufficient evidence that he had the fine manipulation capability to do this job. However, the law judge in essence found that the plaintiff had the ability to perform fine manipulation frequently, and the plaintiff does not meaningfully argue to the

contrary. Further, the law judge included in the pertinent hypothetical question a limitation of frequent fine manipulation, and the vocational expert identified parking lot attendant as one of the jobs the plaintiff could perform. Thus, the expert's testimony provides substantial evidence that the plaintiff could perform the job of parking lot attendant even with a limitation of frequent fine manipulation.

There are, consequently, at least two jobs, cashier and parking lot attendant, that the plaintiff could perform. Either one of them would be sufficient to sustain the finding that the plaintiff was not disabled.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this __19th__ day of January, 2012.

> THOMAS G. WILSON
> UNITED STATES MAGISTRATE JUDGE